Gary Wayne **FANNON,** Plaintiff,

v.

Kurt **JOHNSTON,** Defendant.

No. Civ. 98–CV–72006–DT.

United States District Court, E.D. Michigan, Southern Division.

March 24, 2000.

John M. Peters, Peters & Peters, Bloomfield Hills, MI, Patrick J. McQueeny, St. Clair Shores, MI, for plaintiff.

Margaret T. Debler, Johnson, Rosati, Farmington Hills, MI, for defendant.

Margaret A. Nelson, Michigan Department of Attorney General, Lansing, MI, for defendant Michigan State Police.

Dennis A. Alberts, Troy, MI, for defendant Canton, Township.

*OPINION & ORDER GRANTING PLAINTIFF ACCESS TO CERTAIN OF DEFENDANT'S SUBSTANCE ABUSE RECORDS*

CLELAND, District Judge.

## I. Procedural Background

The issue presented is whether 42 U.S.C. § 290dd–2 permits plaintiff to obtain access to defendant's confidential substance abuse treatment records. Because the issues involved present relatively novel issues of federal law, the instant order is an amended combination of previous orders issued in this matter, with a final disposition included. Plaintiff Gary Wayne Fannon filed his initial "Motion to Compel Production of the Drug Rehabilitation Treatment Records of Kurt Johnston" on February 22, 1999, and defendant Kurt Johnston responded on March 4, 1999. Mr. Johnston also filed a "Motion for Protective Order" on March 8, 1999, seeking to prohibit disclosure of those same records. Mr. Fannon filed an "Answer" to that motion on March 31, 1999. Additionally, Mr. Johnston submitted copies of the drug treatment records for the court's *in camera* inspection, and plaintiff responded to that submission by letter on May 24, 1999.

In its initial order of September 23, 1999, the court found that Mr. Fannon had shown good cause for obtaining the release of Mr. Johnston's records, but that no showing had been made that Mr. Johnston had "offered testimony or other evidence" pertaining to the confidential communications contained in his substance abuse records. Consequently, the court denied Mr. Fannon's Motion to Compel Production of those documents, and granted Mr. Johnston's Motion for a Protective Order. However, the court invited the parties to renew the Motion to Compel Production if accompanied by further briefing on the "offering" issue.

Mr. Fannon filed a supplemental brief on that issue on October 7, 1999, and Mr. Johnston responded on October 21, 1999. On January 20, 2000, the court found as a

matter of law that Mr. Johnston had "offered" testimony in this case pertaining to his confidential communications, and that Mr. Fannon was therefore entitled to certain of Mr. Johnston's confidential substance abuse records. Further briefing was received from the parties on Mr. Fannon's specific needs for those records, and which of those records might be responsive to those needs. A hearing was held on that issue on February 3, 2000. Finally, a status conference was held with the parties' counsel on February 16, 2000 to review the parties' proposed joint protective order, and to ascertain about which confidential subjects Mr. Johnston had specifically "offered" testimony, thereby putting at issue in this litigation any of his substance abuse records that might be pertinent to that testimony.

## II. Factual Background[1]

Gary Fannon was arrested on January 10, 1987 and charged with distribution of cocaine in excess of 650 grams. He was then eighteen years old. The arrest was the result of an investigation conducted by the Western Wayne Narcotics Task Force. Kurt Johnston, then a police officer with the Canton Township Public Safety Department ("CTPSD"), was a Task Force member. Mr. Fannon was subsequently convicted and sentenced to life in prison without the possibility of parole. In July, 1996, Mr. Fannon's conviction and life sentence were set aside upon a state trial judge's finding that Mr. Johnston had entrapped Mr. Fannon and that Mr. Fannon's counsel had been constitutionally ineffective. According to Mr. Fannon, the trial judge found that Mr. Johnston had instigated Mr. Fannon's involvement with cocaine in order to feed Mr. Johnston's own cocaine addiction, and that Mr. Johnston lacked credibility.

In 1989, Officer Johnston was investigated in connection with the larceny of prescription drugs from the Michigan State Police property room. During a urinalysis drug screen, Officer Johnston tested posi-

---

1. The facts are taken from the parties' pleadings.

tive for cocaine. On June 19, 1989, CTPSD terminated him.

Following the reversal of his conviction, Mr. Fannon filed this action in the Wayne County Circuit Court against Mr. Johnston, several other police officers, the Western Wayne Narcotics Task Force, and Canton Township. The complaint alleges Fourth Amendment and due process violations by the defendants under the United States Constitution pursuant to 42 U.S.C. § 1983, as well as state law claims of malicious prosecution, false arrest/false imprisonment, and intentional infliction of emotional distress. The defendants removed the matter to this court in May, 1998.

The issue before the court surfaced when Mr. Johnston testified at his January 12, 1999 deposition that (1) his narcotics addiction began with prescription drugs in 1984, when he was treated for spinal meningitis and continued until he entered treatment in 1989; (2) he did not have a cocaine addiction problem when he entered a rehabilitation program in 1989; and (3) he underwent twenty-one days of inpatient and six months of outpatient drug rehabilitation treatment in 1989. However, when asked, Mr. Johnston refused to disclose where he had received drug rehabilitation treatment, claiming privilege under federal law.

Following the deposition, Mr. Fannon served Mr. Johnston with a Request for Production of Documents, requesting the medical records relating to his drug treatment, as well as his personnel file from the police department. Mr. Johnston objected to both requests. Mr. Fannon then filed this motion to compel, seeking an order requiring Johnston to turn over his drug rehabilitation treatment records, claiming that the records are directly at issue in

this case due to "the vast discrepancy in peoples' testimony regarding Mr. Johnston's cocaine usage and other narcotics addictions." (Pl.Mot. at 3.) To show this discrepancy, Mr. Fannon submitted a copy of a June 19, 1989 CTPSD investigative report,[2] in which it was reported that Mr. Johnston admitted at a May 12, 1989 interview that he began using cocaine in the summer of 1987, about six months after Mr. Fannon's arrest. (Id. at Ex. 1, p. 4.) The report also reveals a discrepancy in a statement by Gene Utke of the Catherine McAuley Employee Assistance Program. It notes that as of May 16, 1989, Utke diagnosed Mr. Johnston as having a severe addiction to cocaine and other controlled substances. Utke stated that Mr. Johnston needed immediate hospitalization, with six months of additional daily support group, and that Mr. Johnston denied addiction and substance abuse. (Id.) However, the report later notes that Utke reported in June, 1989 that Mr. Johnston had a moderate cocaine addiction (less than severe), and a very strong chemical addiction to prescription drugs. Mr. Fannon seeks access to the treatment records to determine the "onset, nature and scope" of Mr. Johnston's cocaine addiction. (Pl.Ans. at 5.)

As noted, Mr. Johnston has moved for a protective order, relying upon 42 U.S.C. § 290dd–2 and M.C.L. § 333.6111, in order to prevent disclosure of his drug rehabilitation treatment records, drug screenings, and any references to evaluation, treatment, diagnosis or screening.

### III.  Controlling Law

Under federal law, disclosure of medical records relating to the treatment of drug and alcohol abuse patients in federally funded treatment programs is governed by the provisions of Title 42 U.S.C. § 290dd–2 ("Public Health Service Act")[3]:

---

2.  The findings of the report resulted in Mr. Johnston's termination from the CTPSD for violating department policy prohibiting the use and possession of controlled substances and by illegally removing a quantity of controlled substances from the Western Wayne County Narcotics Unit property room for his own use. (Pl.Mot., Ex. 1 at 6.)

3.  Neither party to this motion challenges the applicability of this statute. Indeed, both sides refer to it extensively in their pleadings. Accordingly, the court will assume that Johnston's treatment program received federal funds.

Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. § 290dd–2(a).

In *Ellison v. Cocke County, Tennessee,* the Sixth Circuit discussed the statute's purpose:

The confidentiality of medical records maintained in conjunction with drug treatment programs are essential to that endeavor. Congress felt 'the strictest adherence' to the confidentiality provision was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help.

63 F.3d 467, 470 (1995) (citation omitted).

▄▄ There are, however, circumstances when disclosure is appropriate. For example, disclosure is permitted if the patient provides prior written consent. *See* 42 U.S.C. § 290dd–2(b)(1). Even if the patient fails or refuses to consent, disclosure is permitted in some circumstances:

(C) If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 U.S.C. § 290dd–2(b)(2)(C). As the party seeking disclosure of the substance abuse treatment records, plaintiff bears the burden of establishing "good cause." *See United States v. Cresta,* 825 F.2d 538, 552 (1st Cir.1987).

The statute also expressly authorizes the Secretary of the Department of Health and Human Services [HHS] to develop "procedures and criteria for the issuance and scope of orders under subsection (b)(2)(C) of this section, as in the judgment of the Secretary are necessary or proper to effectuate the purposes of this section." 42 U.S.C. § 290dd–2(g). Pursuant to that authority, the Secretary of HHS has promulgated regulations implementing the statutory disclosure provisions. *See* 42 C.F.R. §§ 2.1–2.67.

Section 2.64 of the regulations defines "good cause" within the meaning of § 290dd–2(b)(2)(C):

An order under this section may be entered only if the court determined that good cause exists. To make this determination, the court must find that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d).

Furthermore, § 2.63 of the regulations limits the court's power under the statute to authorize disclosure of "confidential communications," providing, in relevant part, that:

(a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:

(3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony

or other evidence pertaining to the content of the confidential communications. 42 C.F.R. § 2.63(a)(3). Therefore, if the information sought contains "confidential communications," plaintiff must satisfy both the "good cause" requirements of § 290dd–2(b)(2)(C) and the requirements of Subdivision (a)(3). For all other information, *i.e.* non-confidential communications, plaintiff must only satisfy the "good cause" test set forth in § 290dd–2(b)(2)(C).

## IV. Analysis

It is undisputed that the drug rehabilitation treatment records sought in Mr. Fannon's motion to compel fall within the protection of § 290dd–2; this is so because the documents contain information relating to the treatment Mr. Johnston received for his substance abuse addictions. The court's *in camera* review of the treatment records reveals that confidential communications are contained throughout the records. Given that the records at issue contain information that is afforded a statutorily presumed privilege of confidentiality, the court will not lightly abrogate that privilege. Consequently, these records may only be disclosed if Mr. Fannon meets the burden of showing both good cause and that the Mr. Johnston offered testimony or other evidence pertaining to the confidential communications contained in his substance abuse treatment records, as required under § 2.63(a)(3).

### A. Whether "Good Cause" Has Been Shown

Mr. Fannon must establish "good cause" under § 290dd–2(b)(2)(C) to gain access to both the confidential and non-confidential communications contained in the records. To this end, he advances several arguments. He seeks disclosure of the records "for direct impeachment of Johnston as well as to show that Johnston had a motive for inducing plaintiff to arrange to supply him with cocaine, *i.e.* to feed Johnston's own habit." (Pl.Ans. at 4.) Also, Mr. Fannon claims that the records are needed to show Mr. Johnston's motive and

to assist in the determination of whether other defendants introduced John-

ston to the illegal use of cocaine while serving as members of Western Wayne Narcotics, as an investigative practice, and ... to assist in the determination of the nature and scope of Johnston's addictions to controlled substances, as reflecting upon his ability to properly discharge his duties as an undercover narcotics officer.

*See* Pl. Counsel 5/24/00 Letter to Court.

In addition, Mr. Fannon argues that because Mr. Johnston's treatment concluded ten years ago, the disclosure of the treatment records would not adversely affect Mr. Johnston as a patient, the physician-patient relationship, nor the treatment services. Mr. Fannon states the following:

[b]alanced against [the potential injury to Johnston] is Gary Fannon's right not to have justice obstructed through the inability to impeach the testimony of the man whose false testimony put him into the state prison system for ten years at age 18.

(*Id.*)

■ There is a paucity of case law analyzing the standards under which substance abuse records may be released under a § 290dd–2 showing of "good cause." Nonetheless, the court finds that Mr. Fannon has made that showing. The facts presented to the court indicate a strong possibility of serious civil rights violations by Mr. Johnston, who by all accounts comes to this litigation with dirty hands. At the very least, it is undisputed that Mr. Johnston was engaged in illicit drug thefts and drug use near the time of plaintiff's wrongful arrest for cocaine distribution.

In essence, Mr. Fannon alleges that Mr. Johnston's own involvement with drugs—whether by use, theft, or distribution—may have played a significant role in Mr. Fannon's entrapment or in Mr. Johnston's ability or willingness to testify truthfully and accurately as to that event. *Cf. O'Boyle v. Jensen,* 150 F.R.D. 519, 521 (M.D.Pa.1993) (releasing substance abuse treatment records appropriate where strong evidence that substance abuse in-

fluenced subject of litigation). The traditional factual questions of who, what, when, why, where, and how regarding Mr. Johnston's drug activities at or near the time of his dealings with Mr. Fannon are essential for Mr. Fannon to present his case and for the trier of fact to accurately determine what happened. This evidence may also be highly relevant for purposes of impeachment and credibility. *See, e.g. United States v. Snowden,* 879 F.Supp. 1054, 1058 (D.Or.1995) (release of records appropriate where substantial need exists to effectively challenge recollection and credibility of individual who has given inconsistent statements of events and was substance abuser at the time of the issues in question).

Mr. Fannon has amply demonstrated several reasons in support of his good cause contention. First, it does not appear that other ways of obtaining this information are available or would be effective. Mr. Fannon has presented evidence of deposition testimony from Mr. Johnston that conflicts with documents regarding Mr. Johnston's drug usage, and the documents themselves appear to contain internal contradictions. Mr. Johnston claims in his deposition that he was not addicted to cocaine at the time of Mr. Fannon's entrapment. The state trial court has already determined that Mr. Johnston lacks credibility, and that Mr. Johnston's cocaine use played a part in his entrapment of Mr. Fannon. The facts of Mr. Johnston's drug involvement are presently unsettled. *Compare United States v. Oberle,* 136 F.3d 1414, 1420 (10th Cir.1998) (no need for records release where other evidence already proved that individual was addicted at the time in question). Accordingly, the

contemporaneously recorded information regarding Mr. Johnston's drug abuse treatment may well be the most accurate source of information as to the nature and extent of Mr. Johnston's drug use. *See Doe v. Marsh,* 899 F.Supp. 933, 935 (N.D.N.Y.1995) (written details in substance abuse treatment records superior to testimony from memory four years later).

Second, the public interest and need for disclosure outweigh the potential injury to Mr. Johnston's privacy, reputation, and relationship with his treatment providers. The treatment in question occurred approximately a decade ago; Mr. Johnston's interest in preserving his privacy lacks the urgency it might have if it were more recent.[4] In any event, by virtue of the litigation leading to Mr. Fannon's release, Mr. Johnston's drug activities have already become public knowledge.

More importantly, however, Mr. Fannon's allegations indicate that Mr. Johnston is not the type of person the confidentiality requirements were implemented to protect. By Mr. Fannon's account, Mr. Johnston was not passively using drugs, idly wrecking his own life and harming only those who voluntarily associated with him. At a minimum, his conduct is alleged to have contributed to the ten-year wrongful imprisonment of another citizen, whose rights Mr. Johnston was sworn to uphold. Mr. Fannon has presented strong evidence that Mr. Johnston's drug use was anything but a "victimless crime." If Mr. Fannon's allegations are accurate, the public's interest in not dissuading Mr. Johnston from obtaining treatment by maintaining his confidentiality was obliterated when Mr. Johnston's drug use became a public menace.[5] Given the egregiousness of the al-

---

**4.** *In camera* review and a protective order will be more than sufficient to protect whatever remaining privacy interests Mr. Johnston may have. *See, e.g. Marsh,* 899 F.Supp. at 935; *Snowden,* 879 F.Supp. at 1058.

**5.** The case defendant relies on in support of not releasing the records, *Smalls v. Fallon,* 1995 WL 5847 (S.D.N.Y. Jan.5, 1995) (unpublished opinion), is distinguishable from the instant case on its facts. In that case, plain-

tiffs brought a federal civil rights action against a police officer who had allegedly wrongfully arrested them and detained them overnight before dropping the charges and releasing them the next morning. The magnitude of difference between the overnight jailing in *Smalls* and what befell plaintiff here is by itself probably sufficient to establish good cause. In addition, the *Smalls* court determined that its plaintiffs were on a fishing expedition for evidence irrelevant to their le-

leged abuses, the public interest in vindicating Mr. Fannon's civil right to be free from wrongful imprisonment far outweighs Mr. Johnston's desire to maintain the confidentiality of his relationship with treatment providers. Mr. Fannon has shown good cause.

**B. Whether Testimony or Other Evidence Pertaining to the Content of the Confidential Communications Was Offered Within the Meaning of § 2.63(a)(3)**

Given that Johnston's confidential communications pervade the records in question, plaintiff Fannon must also show that the requirements of 42 C.F.R. § 2.63(a)(3) have been met. Mr. Fannon argues that the requirements for release have been met, because Mr. Johnston has put his substance abuse at issue and because the court has already found good cause under the circumstances of this case. To the contrary, Mr. Johnston argues that it is not he who raised the issue in this litigation (though other parties, including Mr. Fannon, may have, and the issue may have been raised in other proceedings), and that he has not addressed the issue in a manner particularized enough for him to have "offered" testimony.

■■■ The court may only require the disclosure of Mr. Johnston's confidential[6] substance abuse records if:

The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

*See* 42 C.F.R. § 2.63(a)(3). The universe of case law mentioning this regulation is even more paltry than that addressing the "good cause" requirement; indeed, the

court's review of both federal and state cases reveals that analysis of § 2.63(a)(3) is virtually non-existent. Because the parties' positions in this case appear to require such an analysis, the court will do so.

■■ As with most other evidentiary determinations, a court's decision whether to require the release of confidential substance abuse records is within its broad discretion. *See, e.g. Conway v. Icahn & Co., Inc.,* 16 F.3d 504, 510 (2nd Cir.1994), *affirming* 1993 WL 205136 at *4 (S.D.N.Y. May 10, 1991) (unpublished opinion) (holding that the district court's finding of good cause, as well as the finding that the defendant had "offered" testimony because he had testified in his deposition about his hospital treatment for alcoholism, were reviewable under an abuse of discretion standard). This court will exercise its informed discretion in determining whether to require the release of Mr. Johnston's records.

**1. Whether Previous Consent or Waiver Constitutes Offering Testimony or Other Evidence in this Proceeding**

■■ As Mr. Johnston correctly points out, § 2.63(a)(3) is proceeding-specific. The court-ordered disclosure must be "in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence." In other words, Mr. Johnston must have done something during the course of *this* case that raises the issue of those records; what he did (personally or through counsel) in the course of another proceeding has no effect on that issue in this litigation. This is so because, by its terms, the law is designed to make patients the masters of their confidential information by allowing

gally required proofs. The opposite is true here. The information Mr. Fannon seeks is relevant in varying degrees to virtually all of his claims, and is probably essential to providing an accurate understanding to the trier of fact.

**6.** It bears reiterating that the requirements of § 2.63(a)(3) apply only to *confidential* treatment information, namely, the identity, diag-

nosis, prognosis, or treatment of an individual's substance abuse, and not to objective facts such as treatment procedures. *See Carr v. Allegheny Health, Education & Research Foundation,* 933 F.Supp. 485, 490 (W.D.Pa. 1996); *People in the Interest of R.H.D.,* 944 P.2d 660, 663 (Colo.Ct.App.1997) (protected confidential information is patient's personal report of her history of drug and alcohol abuse).

them to decide to whom and under what circumstances they will release confidential information:

The content of any record referred to in subsection (a) of this section may be disclosed in accordance with the prior written consent of the patient with respect to whom such record is maintained, but only to such extent, under such circumstances and for such purposes as may be allowed under regulations prescribed pursuant to subsection (g) of this section.

See 42 U.S.C. § 290dd–2(b)(1). Written consent must include:

(2) The name or title of the individual or the name of the organization to which disclosure is to be made.

(4) The purpose of the disclosure.

(5) How much and what kind of information is to be disclosed.

(8) A statement that the consent is subject to revocation at any time except to the extent that the program or person which is to make the disclosure has already acted in reliance on it . . .

(9) The date, event, or condition upon which the consent will expire if not revoked before. This date, event, or condition must insure that the consent will last no longer than reasonably necessary to serve the purpose for which it is given.

See 42 C.F.R. § 2.31(a). No disclosure of confidential substance abuse records may be made that does not comply with the terms of the written consent. See 42 C.F.R. § 2.31(c). Hence, the law makes clear that when consent for the release of records is given, the presumption is against general waivers of confidentiality, and instead, that patients have complete control over the terms of any consent they may grant.

Hence, the issue in this part of the analysis is whether Mr. Johnston somehow "waived" his confidentiality. Mr. Fannon argues that Mr. Johnston himself has raised the issue of his substance abuse. Mr. Fannon asserts that the substance abuse was a primary issue during the course of Mr. Johnston's 1989 union grievance proceeding contesting his termination by the Canton police department, and the records of those proceedings are replete with references to Mr. Johnston's substance abuse history. Mr Fannon claims that because Mr. Johnston turned over those grievance records in the course of discovery in this case, Mr. Johnston has waived any confidentiality protections he might have had in the substance abuse records discussing his drug abuse. Though Mr. Fannon's arguments would probably be correct if they were made as part of the grievance proceedings ten years ago, the instant litigation is an entirely different proceeding from the union grievance. The fact that Mr. Johnston consented to or effectively waived his privacy interests in the prior proceeding is limited to that proceeding, and does not effectuate a general waiver. See, e.g. In re B.S., Juvenile, 163 Vt. 445, 659 A.2d 1137, 1141 and n. 5 (1995) (patient's consent for release of substance abuse records for limited purpose of treatment did not imply consent for release in subsequent litigation); In the Matter of Brandon A., 165 Misc.2d 736, 630 N.Y.S.2d 850, 853 (N.Y.Fam.Ct.1995) (where patients had consented to release of substance abuse records to state agency for court-ordered counseling services, patients' subsequent revocation of consent prevented agency from using records in court proceeding against them). There is no showing that Mr. Johnston consented to the release of his substance abuse treatment records in this litigation; rather, he has affirmatively represented the contrary. Mr. Fannon cannot bootstrap Mr. Johnston's "offering" of substance abuse information in the union grievance proceeding over a decade ago to the instant lawsuit by obtaining discovery of that proceeding. Under § 290dd–2, whether Mr. Johnston has raised the issue of his substance abuse depends only on what he has done in this litigation, and not in any other proceeding.

### 2. What It Means to "Offer" Testimony or Other Evidence

The court is not aware of a single case analyzing the meaning of § 2.63(a)(3)'s requirement that a patient "offer[ ] testimony or other evidence" in order for his confidential records to be released, although there exists a smattering of written opinions in which courts have simply come to a conclusion that an offering has or has not occurred. Because of the dearth of such analysis, this court will look to the case law interpreting Federal Rule of Evidence 404(a)(1), whose language, structure, and broad purpose are analogous to that of § 2.63(a)(3). FRE 404(a)(1) states that:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: Evidence of a *pertinent* trait of character *offered by an accused,* or by the prosecution to rebut the same.

(emphasis added).

Rule 404(a) is designed to prevent the introduction of admittedly relevant character evidence about defendants. The Rule exists to promote the social benefit of limiting juries to convicting individuals only upon the facts demonstrating the occurrence of the specific crimes alleged, rather than upon propensity evidence indicating that the defendant is a bad person. *See United States v. Crowder,* 141 F.3d 1202, 1212 (D.C.Cir.1998) (Tatel, J., dissenting on other grounds); *United States v. Gilliland,* 586 F.2d 1384, 1388–89 (10th Cir. 1978).

Similarly, § 2.63 is part of the regulatory implementation of § 290dd–2, whose broad purpose is to promote the social benefit of encouraging individuals with substance abuse problems to seek treatment. *See Ellison v. Cocke County, Tennessee,* 63 F.3d 467, 470 (6th Cir.1995). The legislation attempts to accomplish that goal by strongly hindering the potential release of information, that, if made public, might sully the reputation of the abuser. Such sullying might create a disincentive for him to seek treatment in the first instance, despite the obvious relevance of such information. *See id.*

Under both rules, litigants are generally forbidden from offering highly relevant evidence because Congress has determined that there are other societal interests that outweigh the search for truth. But both rules permit exceptions for the use of the proscribed information under virtually identical circumstances.

Rule 404(a) permits the introduction of character evidence when it is *"offered* by the accused;" likewise, § 2.63(a)(3) authorizes release of confidential records when the "patient *offers* testimony or other evidence." The instant case is not one in which the patient/defendant has intentionally "offered" any evidence pertaining to his records; in fact, he vehemently denies that he has done so. *See, generally* 3 CLIFFORD S. FISHMAN, JONES ON EVIDENCE: CIVIL & CRIMINAL § 16:28 (7th ed. 1999) ("JONES") (defendant can be held to have introduced character evidence warranting rebuttal, whether or not he did so intentionally). Accordingly, the court must determine whether an "offer" has been made, irrespective of Mr. Johnston's intent.

Whether advertently or not, under Rule 404(a), a defendant can "offer" testimony simply by presenting any testimony that could be interpreted as character evidence; doing so is oftentimes referred to as "opening the door." *See* 1 STEPHEN A. SALTZBURG, ET AL., FEDERAL RULES OF EVIDENCE MANUAL, p. 376 (7th ed.1999). There are no hard-and-fast rules for determining when and how far a defendant has opened the door. *See United States v. Wales,* 977 F.2d 1323, 1329 (9th Cir.1992) (Kozinski, J. concurring). The trial court must exercise prudence by closely examining what the defendant has said or offered, and what issues he has raised. *See United States v. Dahlin,* 734 F.2d 393, 395 (8th Cir.1984) (*per curiam* ). The mere act of testifying, by itself, does not mean that a defendant has "offered" testimony about his character. *See* 2 JACK B. WEINSTEIN & MARGARET

B. Berger, Weinstein's Federal Evidence § 404.11[2][b] (2nd ed.1999).

However, once a defendant has raised a particular subject in his testimony,[7] even if only in a general manner and even if only in response to a question from opposing counsel, he has opened the door, and testimony of both a general and specific nature may be elicited to provide a complete picture of the subject raised by the defendant. *See United States v. McHorse*, 179 F.3d 889, 902 (10th Cir.1999) (defendant's testimony on cross-examination that he "was good to everyone" opened door to question about specific wrongdoing against family members), *cert. denied*, —— U.S. ——, 120 S.Ct. 358, 145 L.Ed.2d 280 (1999); *Dahlin*, 734 F.2d at 394–95 (defendant's testimony on cross-examination that he was deeply devoted to his family entitled prosecution to ask him about drug use and family fights; moreover, defendant's volunteered explanation in cross-examination of circumstances of fight was not responsive to the question posed, and therefore, not objectionable).

To the extent a defendant offers one-sided testimony about his lifestyle in order to create a "character mosaic" designed to give the jury the impression that he is (or was) not likely to have committed the crime alleged, he has also opened the door to the other side eliciting testimony that tends to dispel the mosaic. *See United States v. Giese*, 597 F.2d 1170, 1189–90 (9th Cir.1979) (defendant's testimony as to the types of books he sold and read to indicate peaceful propensity not to have engaged in the violent conspiracy alleged opened door to prosecution's questioning of his other literary tastes), relying on *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (providing extensive discussion of use of character evidence).

These principles hold just as true where the character trait raised is the defendant's involvement in the drug trade.

Once a defendant has provided any relevant testimony through any witness regarding that subject, he has "offered" testimony, and the government is free to explore the full nature and extent of his drug activities. *See United States v. Roper*, 135 F.3d 430, 433–34 (6th Cir.1998) (defendant's testimony that he had not previously engaged in drug transactions permitted government to offer specific evidence of such prior activities), *cert. denied*, 524 U.S. 920, 118 S.Ct. 2306, 141 L.Ed.2d 165 (1998); *United States v. Rodgers*, 4 F.3d 995 (Table), 1993 WL 330642 at *1–2 (6th Cir.1993) (unpublished opinion) (defendant's cross examination of government witness regarding defendant's drug dealing activities permitted government to clarify the nature of those activities); *see also United States v. Meacham*, 799 F.2d 751 (Table), 1986 WL 17397 at *2 (4th Cir.1986) (unpublished opinion) (defendant's testimony that he was a "fanatic anti-drug individual" permitted government cross-examination suggesting alternative explanations that monetary reward was his likely motivation for being a former informant, as well as direct testimony by government agent that the information provided by defendant strongly suggested his involvement in the drug trade); *United States v. DiMatteo*, 716 F.2d 1361, 1366 n. 1 (11th Cir.1983) (testimony by former drug user that he was reformed and "neither needed, used, or handled narcotics," as well as testimony by another defendant that he had a blameless past not involving narcotics, constituted "offers" of testimony under Rule 404(a)(1), and government was allowed to introduce evidence to contrary) (internal citations omitted), *vacated and remanded*, 469 U.S. 1101, 105 S.Ct. 769, 83 L.Ed.2d 767 (1985), *aff'd in relevant part on remand*, 759 F.2d 831 (11th Cir.1985); *United States v. Gaertner*, 705 F.2d 210, 216 (7th Cir.1983) (defendant's testimony that he was a "clean-liver" and not into the "drug thing" were "offers" of testimony,

---

7. In the instant case, it is only Mr. Johnston's testimony that is at issue, so the court need not address the hypothetical circumstances under which "other evidence" might constitute an offer.

and permitted the government to question him and offer extrinsic evidence of his prior drug use and convictions).

▇ In the instant case, Mr. Johnston provided the following testimony in response to questions from plaintiff's counsel:

Q. [ ] At the time that you went in for [substance abuse] treatment in 1989, did you have any other addiction problems?

A. No.

Q. Is it your position that you didn't have a cocaine dependency problem?

A. I did not have a cocaine dependency problem.

Q. Were you using cocaine as of 1989?

A. Using cocaine when I was working?

Q. At any time.

A. Yes.

(Dep. Kurt Johnston, 1/12/99 at p. 89).

Q. [ ] Is it your testimony that you never took any cocaine or other controlled substances from the State Police Crime Lab or the evidence room?

A. Correct—let me—are you saying that I took them—I mean, I took evidence from the—to the lab.

Q. I mean—I am sorry, I mean, did you ever improperly remove cocaine from the evidence room?

A. No.

Q. Did you ever have cocaine in your desk drawer at work?

A. Well, apparently they found some in my desk drawer when they did my investigation.

Q. Do you know how it got there?

A. Nope. No, I do not.

Q. Is it your testimony that you did not—you were not responsible for that cocaine being present in your desk drawer?

A. I don't recall. I may have been.

Q. Okay. So you are not sure?

A. I am not sure.

(*Id.* at p. 91–92).

Q. Is it your understanding, as a knowledgeable person in the area of narcotics addiction, that you can develop an addiction simply by that type of isolated use in that manner of use of cocaine [by rubbing it on the gums]?

A. Let me try to answer it this way.

Q. Okay.

A. I certainly abused cocaine. Was I dependant on it? No. I did not gain a dependency on it. I was certainly dependant on opiates, on the pain medication that I was taking, certainly was dependant on that. But I abused cocaine; I wasn't dependant on cocaine.

(Dep. Kurt Johnston, 9/14/99 at p. 26–27).

Q. If you started using it [cocaine] in 1987, and in 1989 a test was run in which it was detected that you had cocaine in your system, then my prior question, the premise of my prior question was correct, wasn't it, that you had used cocaine for approximately two years, up until the time that you were detected as having used it?

A. I would say during a two-year time period.

Q. Right, over a two-year time period?

A. Over a two-year time period, there was sporadic use.

(*Id.* at p. 30–31).

Q. And incidently, you still deny that you had a cocaine addiction problem in 1989; right?

A. Correct. I said I abused it, which is a diagnostic definition; I was not dependent on it.

(*Id.* at p. 47).

In short, Mr. Johnston testified that his use of cocaine was "sporadic," and that at no time during his dealings with the plaintiff in this case was he addicted to it. He testified that he was addicted only to prescription pain killers, and that he never stole cocaine from the police evidence room, as well as that he has no idea how cocaine ended up in his desk drawer. He has clearly "offered" testimony regarding the nature and extent of his drug activities as analogously defined under Rule 404(a)(1). Indeed, Mr. Johnston even volunteered answers regarding his drug use

beyond the scope of the questions asked, as did the defendants in *McHorse* and *Dahlin*, thereby eliminating the potential argument that it was only the promptings of opposing counsel that caused the issues to be raised (though such prompting is certainly not required to find that he "offered" testimony). Mr. Johnston attempted to create a "character mosaic" that minimizes his involvement with the use of cocaine, and presents himself as merely an occasional user rather than an individual whose behavior might have been influenced by a craving for it. *Cf. United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (defendant's claims through counsel in opening statement that his prior activities in failed real estate transaction were innocent permitted government to introduce evidence that those activities were criminal and had resulted in his conviction); *United States v. Segal*, 867 F.2d 1173, 1179 (8th Cir.1989) (defendant's testimony that he was merely a gambler, not a bookmaker, opened door to prosecution witness's testimony that defendant had been a bookmaker); *see also* JONES at § 16:29 (defendant's testimony that he was not "the kind of guy" to abuse or sell cocaine, and only used occasionally, was offering of testimony that should permit rebuttal character evidence under Rule 404(a)(1)). Accordingly, by analogy, the court finds that Mr. Johnston has "offered" testimony under § 2.63(a)(3).

### 3. What It Means for Evidence to "Pertain" to Confidential Communications

■ Section 2.63(a)(3) also limits the conditions of admissibility to those circumstances where the patient's evidence *"pertain[s]* to the content of the confidential communications [during the course of the treatment];" Rule 404(a) similarly limits the circumstances of admissibility to "evidence of a *pertinent* trait of character." "Pertinent" is synonymous with "relevant." *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir.1981) (Wisdom, J.).[8] Hence, the

offered testimony must be relevant or related to the confidential communications. A number of courts have held—with little or no analysis—that confidential substance abuse records cannot be released under § 2.63(a)(3) if the patient has not testified or offered other evidence about the confidential communications themselves. *See, e.g. Jane H. v. Rothe*, 488 N.W.2d 879, 884 (N.D.1992); *Whyte v. Connecticut Mutual Life Ins. Co.*, 818 F.2d 1005, 1010 (1st Cir.1987); *United States v. Smith*, 789 F.2d 196, 205 (3rd Cir.1986). Those holdings constitute a misreading of the regulation. The regulation does not say that the records are releasable only when a "patient offers testimony or other evidence *on the content* of the confidential communications." That interpretation ignores the plain regulatory language stating that testimony *"pertaining* to the content" of the confidential communications is sufficient to break the seal of confidentiality. To accept the analysis implied by those courts' holdings would mean that only a talismanic incantation by a testifying patient of the actual confidential communications could result in their release. Of course, any competent attorney could avoid such a result by simply instructing his client/patient not to reiterate the actual content of those communications as such, while still allowing the client/patient to testify to his heart's content (even in contradiction of his prior confidential communications) about his prior substance use without fear that the testimony could ever be impeached, rebutted, or clarified. The regulatory language does not require such an absurd result; § 2.63(a)(3) creates a burden for release of a patient's records, but the burden is not an impossible one.

The better interpretation is that indicated by the regulatory language: simple relevance. If a patient's testimony is relevant or relates to the content of the confidential communications, then the regulation's standard has been met. *See, e.g.*

---

**8.** Judge Wisdom's observation is confirmed by WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981), which defines "pertain" among other things as: "(2) to have some connection with or relation to something."

*Conway v. Icahn & Co.,* 1993 WL 205136 at *1–4 (S.D.N.Y. May 10, 1991) (plaintiff's deposition testimony that he had checked himself into a hospital for treatment during the period at the center of litigation when plaintiff alleged that it was defendant's actions that had ·resulted in plaintiff's financial losses made relevant confidential records that would demonstrate whether plaintiff had an alcohol abuse problem at that time that might have played part in the financial losses), *aff'd at* 16 F.3d 504, 510 (2d Cir.1994); *In re Romance M.,* 30 Conn.App. 839, 622 A.2d 1047, 1053 (1993) (mother's testimony in parental rights termination action that she was capable of responsibly raising her children was ·relevant to her alcoholism discussed in her confidential records and warranted their release), *aff'd* 229 Conn. 345, 641 A.2d 378 (1994); *Aetna Casualty & Surety Co. v. Ridgeview Institute, Inc.,* 194 Ga.App. 805, 392 S.E.2d 286, 287–88 (1990) (confidential records were relevant where plaintiff doctor had placed in issue reason for changing his practice area for which he was suing insurer by testifying in deposition cross-examination that accident was cause of injuries that caused switch, when there was evidence that he had obtained treatment for alcoholism during same period).

So too here, Mr. Johnston's deposition testimony · relates to the contents of his treatment records. As set out in the previous subsection, he has "offered" testimony regarding the nature, frequency, and behavior associated with his cocaine usage. The court finds that the offered testimony "pertain[s] to the confidential communications."

## V. Conclusion

The court finds that the circumstances of this case require the release of Mr. Johnston's substance abuse treatment records. Mr. Fannon has shown good cause for their release, and it is apparent that Mr. Johnston did offer testimony in this case pertaining to the confidential communications contained in his substance abuse treatment records. One might observe from the foregoing discussion that, in a case such as the one at hand, where the plaintiff alleges that the defendant's involvement with drugs led to the harm for which the plaintiff ˙ brought suit, § 2.63(a)(3) probably affords little protection. Unlike in the criminal context, a civil defendant does not enjoy the option of not testifying, and presumably can be questioned about matters pertaining to his alleged substance abuse. Assuming such questions meet the minimum threshold of relevance, it is almost inevitable that the defendant will be. found to have "offered testimony or other evidence pertaining to the content of his confidential communications." The argument could be made that this result is inconsistent with Congress's statutory objective in enacting 42 U.S.C. § 290dd–2; namely, to provide a high level of legally enforceable confidentiality for substance abuse treatment records in order to avoid stigmatizing those who seek treatment.

Such observations are all well taken. However, § 2.63(a)(3) should not be viewed in isolation. Though its requirements may be met with relative ease in many civil cases, it is not the only barrier to disclosure. As the court discussed in part III.A. of this order, a plaintiff must first show good cause before a court may consider ordering the release of confidential records. As explained there, good cause is not a low burden to meet. And though the court found that plaintiff has met the burden in this case, the court further observes that the circumstances of this case are, to say the least, unusual. It should not be forgotten that though many a moving party might be able to surmount the low hurdle of demonstrating an offer of pertinent testimony under § 2.63(a)(3), it will be the exceptional case that meets the good cause requirements of 42 U.S.C. § 290dd–2(b)(2)(C) and 42 C.F.R. § 2.64(d).

Mr. Fannon has demonstrated, as a general matter, that the confidentiality of Mr. Johnston's substance abuse treatment

records should be breached for purposes of this litigation. However, even this showing would not warrant releasing those records wholesale. Mr. Fannon has enunciated to the court, under a relevancy standard, the type of information he seeks and the purposes for which such information might be used in this case. "If it finds relevant material, the [ ] court may then fashion an order of disclosure restricting access or use of the material to the narrowest manner possible to preserve as far as practicable the goal of confidentiality mandated by federal law." *Ridgeview Institute,* 392 S.E.2d at 288.

The court has reviewed Mr. Fannon's reasons for seeking those records, Mr. Johnston's deposition testimony, and the substance abuse treatment records. The court will release records pertaining to the following subjects, where the information in the records appears to possibly differ from Mr. Johnston's deposition testimony: 1) the medically-diagnosed nature of his involvement with cocaine; 2) the beginning, duration, and end of his cocaine use; and 3) his possession and use of cocaine on the job as a police officer.

Accordingly, IT IS ORDERED that plaintiff's "Motion to Compel Production of Defendant Kurt Johnston's Drug Rehabilitation Records" is GRANTED IN PART as to those records that plaintiff has demonstrated a need to obtain, and that the court will release in a separate order noting the Bates-stamp numbers of the released documents.

IT IS FURTHER ORDERED that defendant's "Motion for a Protective Order" is DENIED IN PART as to those documents that the court orders released to plaintiff's counsel.

IT IS FURTHER ORDERED that defendant's "Motion for a Protective Order" is GRANTED IN PART as to those documents that the court does not order released to plaintiff's counsel.

IT IS FURTHER ORDERED that the use of any documents released to plaintiff's counsel is to be strictly governed by the STIPULATED PROTECTIVE ORDER PURSUANT TO MCR 2.302(C)/FRCP 26(c) issued by the court on February 17, 2000.