Gary P. MOSIER, Plaintiff,

v.

AMERICAN HOME PATIENT, INC., Defendant.

No. 4:01CV11–WS.

United States District Court, N.D. Florida, Tallahassee Division.

Nov. 1, 2001.

Marie A Mattox, Mattox & Hood PA, Tallahassee, FL, for Gary P Mosier, plaintiff.

Darryl L Gavin, Francis H Sheppard, Rumberger Kirk Caldwell PA, Orlando, FL, for American Homepatient, Inc., defendant.

## ORDER

SHERRILL, United States Magistrate Judge.

Pending is Defendant's motion to compel release of medical and other records. Doc. 22. Plaintiff has responded. Doc. 28.

The motion relates to request for production 12 of Defendant's first request for production of documents. Plaintiff did not object to signing a release for medical and psychiatric records, but objected that alcohol or drug abuse treatment records are "privileged under federal law." Since the release which Defendant sent to Plaintiff covered all records without distinction, Plaintiff could not sign it without waiving this specific objection. A release for medical and psychiatric records should be signed when presented. Thus, the motion is moot as to medical and psychiatric records.

This leaves for consideration any records concerning substance abuse treatment. Plaintiff has a duty, upon a proper discovery request, to inform Defendant of the existence of every episode of treatment for substance abuse, as well as to tell Defendant the truth about problems he has had with substance abuse. Presumably he has done so. The records now sought relate to a course of treatment for alcoholism in 1993 at Tallahassee Community Hospital. Defendant has not disagreed that this hospital receives federal funds.

These records, therefore, are confidential under federal law. 42 U.S.C. § 290dd–2(a). The patient may give written consent to authorize disclosure. 42 U.S.C. § 290dd–2(b).

Disclosure may also be permitted by court order:

> If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 U.S.C. § 290dd–2(b)(2)(C). To determine whether good cause exists, the court "must find that:"

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d) (implementing the statute as authorized by 42 U.S.C. 290dd–2(g)). An order which permits disclosure must be strictly limited to the subjects specified by the regulation. 42 C.F.R. § 2.64(e).

Finally, "confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral" in such records may be disclosed after first a showing of good cause as set forth above, and then only if:

(1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;

(2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or

(3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. § 2.63(a).

■■■ The privilege should not be "lightly abrogated." *Fannon v. Johnston,* 88 F.Supp.2d 753, 758 (E.D.Mich.2000). Both the statute invoked by [defendant] and the governing regulations carry a strong presumption against disclosing records of this kind. 42 U.S.C. § 290ee–3(a) [now 290dd–2]. The express purpose of this provision is to encourage patients to seek treatment for substance abuse without fear that by so doing, their privacy will be compromised. See 42 C.F.R. § 2.64(f). See also *United States v. Graham,* 548 F.2d 1302, 1314 (8th Cir.1977).

*United States v. Cresta,* 825 F.2d 538, 551–552 (1st Cir.1987), *cert. denied,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). "Congress felt 'the strictest adherence' to the confidentiality provision was needed, lest individuals in need of drug abuse treatment be dissuaded from seeking help." *Fannon,* 88 F.Supp.2d at 757, quoting *Ellison v. Cocke County, Tennessee,* 63 F.3d 467, 470 (6th Cir.1995).

In the *Fannon* case, good cause was shown because the patient was the defendant in a civil suit, his involvement with drugs was central to plaintiff's claim against him, and that involvement was substantially contested. 88 F.Supp.2d at 759. Further, the treatment was nearly 10 years earlier, diminishing expectations of privacy. *Id.* "More importantly," the patient was

> not the type of person the confidentiality requirements were implemented to protect. By Mr. Fannon's account, Mr. Johnston was not passively using drugs, idly wrecking his own life and harming only those who voluntarily associated with him. At a minimum, his conduct is alleged to have contributed to the ten-year wrongful imprisonment of another citizen, whose rights Mr. Johnston [as a police officer] was sworn to uphold.

*Id.*

Good cause was also found in *Mulholland v. Dietz Co.,* 896 F.Supp. 179 (E.D.Pa. 1994). In that case, the plaintiff had sued for personal injuries arising from an accident. He admitted that he had an alcohol

and drug problem at the time of the accident. Good cause was found since plaintiff's injuries may have been caused by his own conduct. 896 F.Supp. at 180.

Good cause was not found in *Bell v. State*, 385 So.2d 78 (Ala.Crim.App.1980), where the patient was thoroughly cross-examined about her substance abuse, using numerous hospital records. 385 So.2d at 80. The court reasoned that "further testimony or extrinsic evidence on that subject would have been cumulative, repetitious and somewhat akin to 'beating a dead horse.'" *Id.* at 81.

In this case, Plaintiff testified in a deposition that he has struggled with "substance abuse issues" since 1993, which includes some of the time he was employed by Defendant. He said he did not perceive that he was recovered, and admitted that he still drinks a couple of times a week. Doc. 28, deposition, p. 47. He said that in 1993, he thought he was drinking too much and sought help. *Id.* He said he went for long periods of time when he did not drink at all. *Id.*, p. 49. Plaintiff also said he suffered from depression since college, and had a bout of depression in 1999. *Id.*, p. 50. Plaintiff admitted that he suffered from depression, bronchial pneumonia, sleep apnea, and the effects of medication, when he worked for Defendant. *Id.*, pp. 53–54.

A supervisor, Alicia Mersdorf, testified in a deposition that Plaintiff appeared at work "disheveled" sometimes, and she "very frequently" thought that he "smelled as if he had been drinking," but she was not certain because the smell could have been cologne. *Id.*, deposition of Mersdorf, p. 42. She also thought he might be drinking alcohol due to his observed "behavioral pattern," that is, his "inability to complete the work in a timely fashion," "feelings of being overwhelmed, of not being quite able to cope." *Id.*, pp. 42–43. She said, however, that she never saw Plaintiff "impaired" until the very end. *Id.*, p. 43. Another supervisor, however, Annette Cox, said that no one had ever come to her to suggest that Plaintiff was drinking alcohol on the job. *Id.*, deposition of Cox, p. 35.

■ Defendant contends it should be able to review these records to see if substance abuse affected Plaintiff's work, including Plaintiff's ability to work when he was terminated. Defendant also argues that substance abuse may have adversely affected Plaintiff's ability to mitigate damages by finding other work after he was terminated.

Were it not for the privilege, the court would order that these records be produced. They are obviously relevant to a potential defense. Indeed, records of treatment for substance abuse would probably be relevant in every employment discrimination case, since substance abuse can so drastically impair work performance.

■ But this particular privilege is a strong one, not to be lightly set aside, and mere relevance to a potential defense is not enough. The statute itself gives an example of the type of good cause which would justify abrogation of the privilege, and it is obvious that there is no "need to avert a substantial risk of death or serious bodily harm."

■ The court, therefore, must examine the significance of Defendant's potential defense in its current context, which admittedly is a bit premature, and this presents a difficult problem. Discovery is intended to be rather broad to avoid premature foreclosure of the truth.

That having been said, on this record it would appear that the defense that Plaintiff's work performance was impaired by alcoholism is not now of sufficient signifi-

cance to warrant setting aside the privilege. The only evidence is that Plaintiff was treated in 1993, six years before his period of employment with Defendant. There is no significant collateral evidence that he was abusing alcohol during his employment with Defendant in 1998 and 1999. Since his termination, Plaintiff represents that he has been able to find continuous employment similar to the position he lost with Defendant, and therefore there is little need to inquire whether he has been unable to secure a good job due to substance abuse. The public interest in protecting the confidentiality of these records, absent some compelling need in litigation, is great as explained in the cases cited above. For these reasons, it is concluded that "good cause" as intended by this statute has not been shown.

Consequently, Defendant's motion to compel, doc. 22, is **DENIED.** The issues were fairly debatable, and each side will bear their own expenses.