[Cite as *Ohio State Dental Bd. v. HealthCare Venture Partners, L.L.C.*, 2014-Ohio-2508.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ohio State Dental Board, | : | |
| Petitioner-Appellee, | : | |
| v. | : | No. 14AP-165 |
| | | (C.P.C. No. 13 MS 964) |
| HealthCare Venture Partners, LLC  et al., | : | |
| | | (REGULAR CALENDAR) |
| Respondents-Appellees, | : | |
| (Dr. J.W., D.D.S., | : | |
| Appellant). | : | |

# D E C I S I O N

### Rendered on June 10, 2014

*Michael DeWine*, Attorney General, and *Katherine J. Bockbrader*, for appellee Ohio State Dental Board.

*Frank R. Recker & Associates Co., LPA, Todd W. Newkirk* and *Frank R. Recker*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} This appeal concerns two subpoenas issued by the Ohio State Dental Board ("Board") to obtain records and testimony from a treatment facility where Dr. J.W., an oral surgeon licensed in the state of Ohio, underwent diagnosis and/or treatment for alcohol abuse or dependence. On appeal, Dr. J.W. assigns the following as error:

> [I.] The trial court erred in denying Dr. J.W.'s motion to dismiss for lack of jurisdiction.

[II.] The trial court erred in ordering the disclosure of protected medical records when it found a good cause exception to 42 U.S.C. 290dd-2.

[III.] The trial court erred in findings [sic] that confidential communications in Dr. J.W.'s records could be disclosed under 42 U.S.C. 290dd-2.

{¶ 2} Dr. J.W. was the subject of an investigation by the Board as to whether he was impaired in his ability to practice dentistry. On March 21, 2012, Dr. J.W. performed oral surgery while under the influence of alcohol at St. Elizabeth Healthcare in Fort Thomas, Kentucky. After the surgery, Dr. J.W. was found to have a blood alcohol content of 0.184 mg/dl. At that time, Dr. J.W.'s hospital privileges were summarily suspended. The next day, he was admitted for detoxification and stabilization to St. Elizabeth Healthcare in Falmouth, Kentucky, a hospital-based facility. Three days later, he was discharged and authorized to return to work as of March 26, 2012, with no restrictions. He was, however, instructed not to drink alcohol or use mood altering drugs, to obtain a sponsor, and to follow-up with his primary physician for any medical problems. Two months later, Dr. J.W. was arrested and pled guilty to Driving Under the Influence/Aggravated in Oldham, Kentucky. His blood alcohol content on that occasion was .181.

{¶ 3} The Board ordered Dr. J.W. to submit to a 72-hour evaluation at The Ridge, a Board approved treatment facility, to determine whether he was impaired in his ability to practice dentistry due to alcohol dependence or abuse. *See* R.C. 4715.30 (authorizing the Board to order the license holder to submit to reasonable examinations at the Board's request and expense). Dr. J.W. signed a release to permit The Ridge to disclose information to the Board.

{¶ 4} A physician from The Ridge, Dr. Todd Carran, provided a report indicating that Dr. J.W. was alcohol dependent and impaired in his ability to practice dentistry. The Board concluded that his further practicing presented a danger of immediate and serious harm to the public, and summarily suspended Dr. J.W.'s license on December 4, 2013. Dr. J.W. requested a hearing that same day, and the Board scheduled an administrative

hearing to make a final determination as to whether Dr. J.W. should be allowed to keep his professional license.

{¶ 5} Dr. J.W. challenged the Board's ability to use information from The Ridge at his hearing. On the eve of the hearing, Dr. J.W. claimed that the release he signed was invalid under the Public Health Service Act, 42 U.S.C. 290dd-2. The hearing was recessed to permit the Board to seek a court order to authorize the use of the information from The Ridge.

{¶ 6} HealthCare Venture Partners, LLP (hereafter "HCVP"), which operates The Ridge, took the position that federal law prohibited it from complying with the subpoenas without a court order to do so pursuant to 42 U.S.C. 290dd-2. That statute provides in pertinent part that:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall * * * be confidential and be disclosed only for purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. 290dd-2(a)

{¶ 7} Subsection (b)(2)(C) of the statute provides that records from alcohol and drug treatment facilities may be disclosed pursuant to a court order:

> If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

{¶ 8} To determine whether good cause exists, "the court must find that: (1) Other ways of obtaining the information are not available or would not be effective; and (2) The

public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. 2.64(d) (implementing the statute as authorized by 42 U.S.C. 290dd-2(g)). An order which permits disclosure must be strictly limited to the subjects specified by the regulation. 42 C.F.R. § 2.64(e).

{¶ 9} Finally, "confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral" in such records may be disclosed after a showing of good cause as set forth above, and then only if:

> (1) The disclosure is necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties;

> (2) The disclosure is necessary in connection with investigation or prosecution of an extremely serious crime, such as one which directly threatens loss of life or serious bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a deadly weapon, or child abuse and neglect; or

> (3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. 2.63(a).

{¶ 10} On December 19, 2013, the Board initiated an action in the Franklin County Court of Common Pleas to enforce the subpoenas issued by the Board upon Dr. Todd Carran, and the records custodian of The Ridge. The Board brought the action under R.C. 119.09, a statute that authorizes an agency to bring an action in common pleas court to compel compliance with agency subpoenas. The Board sought an order holding that 42 U.S.C. 290dd-2 was not applicable to the records held by The Ridge relating to Dr. J.W. Alternatively, the Board also sought an order pursuant to 42 U.S.C. 290dd-2(b)(2)(C) authorizing Dr. Carran and the records custodian for The Ridge to testify and present evidence from The Ridge at the administrative hearing.

{¶ 11} The court of common pleas conducted a hearing on January 9, 2014. At the conclusion of the hearing, the judge announced that she was ruling in favor of the Board.

{¶ 12} On January 15, 2014, counsel for Dr. J.W. filed a motion to dismiss for lack of jurisdiction. Dr. J.W. claimed that the only court with jurisdiction to order compliance with the subpoenas was in Clermont County where HCVP and the relevant records were located. The trial court denied the motion finding that jurisdiction and venue were proper in Franklin County. On February 7, 2014, the trial court issued its judgment entry granting the Board's application.

{¶ 13} The trial court made a finding that the federal statute applied to the information sought by the Board, but did not explain its reasoning. The trial court further found that good cause existed to disclose the records because the public interest in the Board's use of the information to determine Dr. J.W.'s fitness to practice dentistry outweighed any potential injury to Dr. J.W. The trial court also found that other means of obtaining the information were not available or would not be effective. In order to protect Dr. J.W.'s interests in safeguarding the records from unauthorized disclosure, the trial court ordered that the documents at issue be admitted under seal and, among other things, that the administrative hearing before the Board be closed to the public during the periods when information from the records would be revealed or discussed.

{¶ 14} In his first assignment of error, Dr. J.W. argues that the trial court improperly exercised jurisdiction under R.C. 119.09 to enforce the subpoenas because they were not issued until December 18, 2013, a day after the administrative hearing began.

{¶ 15} Dr. J.W. does not have standing to assert that witnesses were not properly served with subpoenas or did not have sufficient time to respond. As a non-party to the subpoena enforcement action, Dr. J.W.'s right to participate was limited to notice and the right to be heard regarding the federal statute. 42 C.F.R. 2.64. Even if Dr. J.W. had standing to assert this claim, the record shows that, on December 18, 2013, the Board issued subpoenas for The Ridge records as well as Dr. Carran to testify in support of the suspension of Dr. J.W.'s license. The subpoenas were hand delivered and, on that same day, counsel for The Ridge informed the Board that the facility refused to comply with the subpoenas unless a common pleas court issued an order compelling it to do so.

{¶ 16} In addition, the trial court's inherent jurisdiction to enforce an administrative subpoena is part of certain powers that are necessary for the orderly and efficient exercise of justice. R.C. 2705.02 gives a trial court authority to punish as contempt failure to obey a subpoena.

{¶ 17} R.C. 119.09 provides, in pertinent part, that:

> In any case of disobedience or neglect of any subpoena served on any person or the refusal of any witness to testify to any matter regarding which the witness may lawfully be interrogated, the court of common pleas of any county where such disobedience, neglect, or refusal occurs or any judge thereof, on application by the agency shall compel obedience by attachment proceedings for contempt, as in the case of disobedience of the requirements of a subpoena issued from such court, or a refusal to testify therein.

{¶ 18} Here, the "disobedience" of the subpoena occurred in Franklin County where the witnesses were required to testify and produce records at the administrative hearing. Thus, R.C. 119.09 permits the Franklin County Court of Common Pleas to enforce a subpoena issued by the Board for an administrative hearing in Franklin County.

{¶ 19} Assuming Dr. J.W. is arguing venue was improper in Franklin County, as a non-party he again lacks standing to assert this argument. *See* Civ.R. 3(C) (permitting assertion of improper venue to be raised by the defense).

{¶ 20} Dr. J.W.'s jurisdictional arguments are not well-taken, and the first assignment of error is overruled.

{¶ 21} In his second assignment of error, Dr. J.W. asserts that the Board lacked good cause for disclosure because it was unable to show that the public interest and need for disclosure outweighed any adverse effect that the disclosure might have on him.

{¶ 22} Preliminarily, the Board has argued that the materials and testimony it seeks are outside the purview of 42 U.S.C. 290dd-2. The Board's position is that the statutory confidentiality provisions do not apply because Dr. J.W. was not a patient seeking treatment. He was undergoing a Board-ordered examination, which the Board paid for. He had no expectation that the information he provided would be confidential, as he knew the purpose of the evaluation was for The Ridge to evaluate him and provide expert opinion to the Board as to whether he was impaired in his ability to practice.

{¶ 23} Dr. J.W. takes the position that the diagnostic evaluation was to determine whether he required alcohol treatment and what type of treatment would be required.

{¶ 24} The purpose of the statute and regulations prohibiting disclosure of records relating to substance abuse treatment except by patient consent or court order after a showing of good cause is to encourage patients to seek treatment for substance abuse without fear that by so doing, their privacy will be compromised. *Mosier v. Am. Home Patient, Inc.*, 170 F.Supp.2d 1211 (N.D.Fla. 2001).

{¶ 25} Therefore, in order to determine whether the Act applies to Dr. J.W. with respect to his evaluation at The Ridge, we must determine whether Dr. J.W. was a patient within the meaning of the statute and whether his diagnosis was made for the purpose of treatment or referral for treatment. The term "patient" is defined in the regulations as "any individual who has applied for or been given diagnosis or treatment for alcohol or drug abuse at a federally assisted program." 42 C.F.R. 2.11.

{¶ 26} The U.S. Department of Health and Human Services has issued a technical assistance publication for the confidentiality of records for alcohol and other drug treatment. That publication states in pertinent part that:

> A patient is anyone who has applied for or received a diagnostic examination or interview, treatment, or referral for treatment for drug or alcohol abuse from a drug or alcohol program. Applicants for such services are covered by the regulations even if they fail to show for their initial appointment or evaluation or, having been interviewed or diagnosed, elect not to follow up or enter treatment.

DHHS Publication No. (SMA) 95-3018 (1994). The regulations protect current, former, and deceased patients.

{¶ 27} Here, Dr. J.W. was evaluated for alcohol dependence at The Ridge, and that one purpose of the diagnosis was to advise the Board whether he was impaired in his ability to practice. It also appears from exhibits attached to Dr. J.W.'s memorandum in opposition to the application to enforce subpoenas that The Ridge was authorized to disclose, exchange, and receive information for purposes of "participation in the family program," "to coordinate treatment," "to gather assessment information for treatment planning," and "to gather information for ongoing treatment." (*See* Trial Court Record

632 of 985 under seal.)   Therefore, while the Board has made a colorable argument that the federal regulations may not apply to Dr. J.W.'s evaluation at The Ridge, on the record before us, it is equally plausible that diagnosis and treatment were part of the evaluation Dr. J.W. underwent at The Ridge.

{¶ 28} We need not resolve this issue at this time, however, because the trial court found and we agree that good cause existed for disclosure of the information to the Board. As referred to above, to determine whether good cause exists, the court must find that other ways of obtaining the information are not available or would not be effective, and that the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship, and the treatment services.

{¶ 29} Dr. J.W. conceded that the Board had no alternative means of obtaining the information in the absence of a court order.   In this case, the records sought are from a Board ordered evaluation rather than private, voluntary treatment.   Moreover, Dr. J.W. initially signed a release allowing disclosure of the information.   Even though he later attempted to revoke his waiver of confidentiality, it is apparent that he knew the record of his evaluation at The Ridge was not confidential to the extent it would be obtained and seen by the Board.   Obviously, there is little expectation that the results of a Board ordered evaluation would not be disclosed to the same Board who requested the examination.

{¶ 30} The second assignment of error is overruled.

{¶ 31} In his third assignment of error, Dr. J.W. argues that certain confidential communications should not be disclosed.   Confidential communications are those made by a patient to a program in the course of diagnosis, treatment, or referral for treatment. 42 C.F.R. 2.63.  The federal confidentiality regulations are strict, but not absolute.

{¶ 32} 42 C.F.R. 2.63(a)(1) permits disclosure if it "is necessary to protect against an existing threat to life or of serious bodily injury."   42 C.F.R. 2.63(a)(3) permits disclosure if "[t]he disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications."

{¶ 33} The interest in protecting the public from an impaired oral surgeon with a substance abuse problem is intuitively obvious.   An impaired oral surgeon's substance

abuse presents an identifiable risk of harm to the dental patients seen by the oral surgeon. There is a danger of serious harm to the public due to Dr. J.W.'s inability to practice under accepted professional standards because of his alcohol dependency.  Even though Dr. J.W.'s license is currently under suspension, the risk of the suspension being lifted or his return to practice because of an inability to present the records to the Board is an immediate threat to the public safety.  Before the hearing was recessed, Dr. J.W. presented evidence that contradicted the information contained in the communications from The Ridge. Under these circumstances, the potential harm to the public greatly outweighs the potential harm to Dr. J.W. from having his records revealed to the Board.

{¶ 34} The safeguards ordered by the trial court to protect the disclosure of the information outside of the hearing are a further indication that any harm to Dr. J.W. is of a lesser degree than the harm to the public.

{¶ 35}  The third assignment of error is overruled.

{¶ 36} Based on the foregoing, the three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN and CONNOR, JJ., concur.

————————————