In re Arbitration Between LOCAL 738, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Respondent,

and

CERTIFIED GROCERS MIDWEST, INC., Petitioner.

No. 89 C 7476.

United States District Court, N.D. Illinois, E.D.

May 24, 1990.

Joshua D. Holleb, Fox and Grove, Chicago, Ill., for petitioner.

## MEMORANDUM OPINION AND ORDER

### HOLDERMAN, District Judge:

Petitioner Certified Grocers Midwest Inc. ("Certified") has filed a petition to compel enforcement of two subpoenas duces tecum issued during the course of a grievance arbitration. The subpoenas seek the disclosure of certain patient records maintained at St. Joseph Medical Center in Joliet, Illinois. More precisely, the subpoenas seek the disclosure of information regarding the drug abuse of one of Certified's former employees and the course of treatment provided by St. Joseph's to this employee. Jurisdiction is proper under either § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 or the United States Arbitration Act, 9 U.S.C. § 1, *et seq. See Local 757, International Brotherhood of Teamsters v. Borden, Inc.,* 78 L.R.R.M. 2398, 1971 WL 801 (S.D.N.Y.1971).

### BACKGROUND FACTS [1]

Certified is a wholesale grocery cooperative that warehouses and distributes groceries and related products to grocery stores and supermarkets throughout the Midwest. John Doe worked as a truck loader at Certified's distribution center in Hodgkins, Illinois.[2]

Between May and July of 1988 Mr. Doe's supervisors began to notice changes in his behavior. The parties agree that "[h]is normally passive personality became aggressive." (Certified's Mem. in Support, p. 4.) In May he was disciplined and received a four day suspension for urinating outside a trailer at Certified's loading dock. His supervisors began to suspect that Mr. Doe was involved in the use of unlawful drugs.

Mr. Doe was absent from work on August 1 and August 2, 1988. Each day he called in to report that he was sick. On August 4th or 5th Mr. Doe again called in, this time to relay the information that he was in the hospital.

On Monday, August 8, 1988, Certified received a call from Teresa A. Deneau, a substance abuse counselor at St. Joseph's Hospital. Ms. Deneau informed one of Certified's managers that Mr. Doe had been admitted to the substance abuse program at the hospital. Ms. Deneau stated that Mr. Doe was being treated for addiction to cocaine and for marijuana abuse. Ms. Deneau suggested that one of Certified's managers, Mark Swift, participate in Mr. Doe's rehabilitation by attending a counseling session with the patient. (Certified's Mem. in Support, p. 4.)

On August 15, 1988 Mr. Swift went to the hospital and met with Mr. Doe and Ms. Deneau. During the meeting Ms. Deneau showed Mr. Swift a consent form that John Doe had signed. The consent form, attached as an exhibit to Certified's Petition, purported to authorize St. Joseph's release to Certified of all information and records in Mr. Doe's file. (*See* Exhibit B to Petition.) At this meeting Mr. Swift informed Mr. Doe that if he started using cocaine again, he could be terminated.

The consent form, although signed by Mr. Doe, was not dated and no expiration date was designated in the space provided therefor. The form also stated:

---

1. The background facts of this proceeding have been drawn primarily from Certified's memorandum in support of its petition. The Union has agreed, for purposes of this proceeding, to Certified's statement of the facts. (*See* Respondent's Mem. in Opposition to Petition, p. 2.)

2. The court has designated Certified's former employee as "John Doe" in accordance with 42 C.F.R. § 2.64(a).

I understand that I may revoke this consent at any time....

\*     \*     \*     \*     \*     \*

Under Federal Act of July 1, 1975, Confidentiality of Alcohol and Drug Abuse Patient Records, no such records nor information from such records may be further disclosed without specific authorization from such re-disclosure. A general authorization for the release of medical or other information is not sufficient for this purpose.

(Exhibit B to Petition.)

Mr. Doe returned to work on September 1, 1988 but called in sick a week later. On September 19, 1988 Mr. Doe left work early because of illness. Concerned over the "emerging pattern of attendance problems," Certified's personnel manager, Ted Clinnin, called Ms. Deneau at St. Joseph's on September 22. (Certified's Mem. in Support, p. 5.) Ms. Deneau told Mr. Clinnin that she was unaware that Doe had missed work, but that a drug screen had been conducted at the hospital that morning. On September 27 Ms. Deneau informed the personnel manager that the drug screen was positive for cocaine and marijuana. Ms. Deneau reported that Mr. Doe had admitted to renewed use of these drugs, and on at least one occasion had used cocaine on a work day.

On September 28, 1988 Certified decided to discharge Mr. Doe because he used cocaine on a work day and because he posed a serious safety hazard to himself and his co-workers. Mr. Doe was discharged during a meeting conducted at the hospital on September 29, 1988.[3] (Certified's Mem. in Support, p. 6.)

The Union grieved the discharge and, pursuant to the parties' collective bargaining agreement, the matter was submitted to arbitration. In preparation for the arbitration hearing, on May 2, 1989 Certified served by mail a subpoena duces tecum, authorized by Arbitrator Albert A. Epstein, on both St. Joseph Medical Center and Ms. Deneau. (Petition, ¶ 8.) The subpoenas

sought to compel the presence of Ms. Deneau and the Hospital's custodian of records at the arbitration proceedings scheduled for May 17, 1989. The subpoenas, as noted earlier, also sought the production of all of Mr. Doe's inpatient and outpatient records, all records pertaining to drug abuse testing and all documents describing the procedures and polices used by St. Joseph's for drug abuse testing. (*See* Exhibit C to Petition.)

Prior to the hearing, John Doe revoked the consent he had signed while being treated at St. Joseph's. Consequently, Ms. Deneau and St. Joseph's custodian of records refused to comply with the subpoenas and failed to appear at the arbitration hearing. (Certified's Mem. in Support, p. 2.) Through counsel, they asserted that the communications and documents at issue were privileged from disclosure.

Certified argued to Arbitrator Epstein that due to Mr. Doe's refusal to make critical evidence available, either his grievance should be dismissed or that an adverse inference must be drawn from the suppression of key evidence. The arbitrator determined that he was without authority to dismiss the grievance solely on the basis asserted by Certified. The arbitrator also found no support for Certified's position with regard to the drawing of an adverse inference. After reviewing the arguments of counsel, the Arbitrator concluded:

> The Company has the right to seek enforcement of the subpoenas in an appropriate forum. If the enforcement of the subpoenas is directed by the appropriate forum, this arbitration proceeding will be resumed.

(Arbitration Opinion, July 24, 1989, p. 21.)

Accordingly, Certified filed its petition with this court.

## DISCUSSION

■ Section 527 of the Public Health

---

**3.** The parties' collective bargaining agreement provides that "[p]roven drunkenness, drug use [or] dishonesty ... shall be reasons for immedi-

ate dismissal without notice." (*See* Exhibit A to Petition, Article 5(a).)

Service Act, 42 U.S.C. § 290ee–3,[4] with certain exceptions not relevant to this proceeding, provides that:

> [r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall ... be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

Subsection (b), in turn, authorizes the disclosure of otherwise confidential records—regardless of whether the patient has given prior written consent—"[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor." 42 U.S.C. § 290ee–3(b)(2)(C).

The Congressional Conference Report issued in connection with the statutory predecessor to 42 U.S.C. § 290ee–3 reflects Congress' determination that only "the strictest adherence" to the confidentiality provisions of the statute would ensure the success of a patient's rehabilitation from drug abuse. The Report states:

> The conferees wish to stress their conviction that the strictest adherence to the provisions of this section is absolutely essential to the success of all drug abuse prevention programs. Every patient and former patient must be assured that his right to privacy will be protected. Without that assurance, fear of public disclosure of drug abuse or of records that will attach for life will discourage thousands from seeking the treatment they must

have if this tragic national problem is to be overcome.

(H.R.Rep. No. 92–920, 92nd Cong., 2d Sess., p. 33 [in U.S.Code Cong. & Admin.News, 1972, p. 2072], and *quoted* in *Commissioner of Social Services of the City of New York v. David R.S.*, 55 N.Y.2d 588, 451 N.Y.S.2d 1, 4 n. 4, 436 N.E.2d 451, 454 n. 4 (1982).)

In order to implement these congressional goals and pursuant to 42 U.S.C. § 290ee–3(g)'s mandate, the Secretary of Health and Human Services (the "Secretary") enacted regulations which provide the procedures and criteria for the type of order sought by Certified in this case.[5] The only regulation that arguably could authorize the disclosure of Mr. Doe's records in this case provides, in relevant part:

> (a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:
>
> \*       \*       \*       \*       \*       \*
>
> (3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. § 2.63(a)(3).

Unfortunately for Certified, courts addressing the issue have determined that the mere fact that someone has filed a lawsuit and has put certain facts in issue does not constitute the requisite offering of testimony or evidence under 42 C.F.R. § 2.63(a)(3). *See Whyte v. Connecticut Mutual Life Ins. Co.*, 818 F.2d 1005, 1010 and n. 18 (1st Cir.1987), *citing Allen v. Holyoke Hospital*, 398 Mass. 372, 496 N.E.2d 1368, 1372

---

**4.** Subsequent to court inquiry, the parties submitted a stipulation that (1) St. Joseph's provides an in-hospital substance abuse program available to members of the public; and (2) that the hospital receives approximately 35% of its net revenue from federally-funded programs. (Joint Statement, filed April 18, 1990.) The court has concluded therefore that the provisions of 42 U.S.C. § 290ee–3 govern this proceeding.

**5.** 42 U.S.C. § 290ee–3(g) provides:

... [T]he Secretary ... shall prescribe regulations to carry out the purposes of this section. These regulations may contain such definitions, and may provide for such safeguards and procedures, including procedures and criteria for the issuance and scope of orders under subsection (b)(2)(C) of this section, as in the judgment of the Secretary are necessary or proper to effectuate the purposes of this section, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

(1986). Similarly, this court has determined that the mere fact that the Union chose to grieve the discharge of John Doe did not constitute the offering of either testimony or other evidence pertaining to the content of the confidential communications between Mr. Doe and various personnel at St. Joseph's Hospital.

■ The court is well aware of the difficult position in which Certified has been placed. Certified, properly or not, was informed about the diagnosis and treatment of Mr. Doe by St. Joseph's Hospital.[6] Based on this knowledge and concerned over the safety of both Mr. Doe and other employees, Certified eventually discharged Mr. Doe. Now Certified is precluded from obtaining the records which could establish that its actions were justified under the collective bargaining agreement between it and the Union.

■ Congress has determined, however, that the public interest in "encourag[ing] the understandably hesitant to come to drug abuse treatment centers in the first place and thereafter to continue to avail themselves of these services" usually outweighs a private litigant's interest in obtaining probative and material evidence—at least until the patient himself has opened the door to disclosure of the confidential records. *See Commissioner of Social Services of the City of New York v. David R.S., supra,* 451 N.Y.S.2d at 5–6, 436 N.E.2d at 455–56. The door must be opened, moreover, within the context of the litigation or administrative proceeding itself—prior waiver or consent does not suffice. And finally, a court cannot compel the disclosure of otherwise privileged records unless and until the patient has waived his privilege by means of offering testimony or other evidence pertaining to the their contents.

### CONCLUSION

For the reasons set forth above, the Petition of Certified Grocers Midwest Inc. to compel enforcement of the arbitration sub-

poenas issued by Arbitrator Albert A. Epstein is DENIED. Judgment shall be entered accordingly.

---

**6.** The statute provides that the procedures and criteria adopted by the Secretary in the regulations pertain to disclosures of confidential information even if the patient has executed written consent. *See* 42 U.S.C. § 290ee–3(b)(1).