J-A04033-15

2015 PA Super 85

MARGARET J. GALLO, INDIVIDUALLY : IN THE SUPERIOR COURT OF
AND AS ADMINISTRATRIX DBN CTA : PENNSYLVANIA
OF THE ESTATE OF JOSEPH J. GALLO, :
SR., :
:
v. :
:
CONEMAUGH HEALTH SYSTEM, INC., :
CONEMAUGH VALLEY MEMORIAL :
HOSPITAL, CONEMAUGH VALLEY :
MEMORIAL HOSPITAL, D/B/A :
MEMORIAL MEDICAL CENTER, :
CONEMAUGH HEALTH INITIATIVES, :
INC., CONEMAUGH HEALTH :
INITIATIVES, INC., D/B/A/ :
CONEMAUGH PHYSICIAN GROUP, :
LAUREL GROUP ANESTHESIA, P.C., :
ASHOK PADHIAR, M.D., RANDY :
JOHNSON, CRNA, CONEMAUGH :
HEALTH INITIATIVES, INC., D/B/A/ :
CONEMAUGH VALLEY SURGEONS, :
RUSSELL DUMIRE, M.D., AND HANNA :
KIM, D.O. :
:
APPEAL OF: ASHOK PADHIAR, M.D : No. 1101 WDA 2014

Appeal from the Order Entered June 16, 2014
in the Court of Common Pleas of Cambria County
Civil Division at No(s): No. 2011-02862

BEFORE: BOWES, OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.: **FILED APRIL 17, 2015**

Ashok Padhiar, M.D. (Dr. Padhiar) appeals from the order entered June 16, 2014, which granted the motion to compel discovery filed by Appellee Margaret J. Gallo (Gallo). After review, we reverse and remand for further proceedings consistent with this opinion.

* Retired Senior Judge assigned to the Superior Court

The trial court aptly summarized the relevant factual and procedural history of this case as follows.

On December 27, 2009, at 2:00 p.m., Joseph J. Gallo ("Mr. Gallo") entered Conemaugh Valley Memorial Hospital's Emergency Room. Mr. Gallo complained of an odorous, blackened "second toe on his right foot" that was discharging pus. Paul Rollins M.D. ("Dr. Rollins") was treating Mr. Gallo for gangrene on the same toe and had scheduled previously a January 2, 2010 amputation of it. Mr. Gallo, however, admitted himself to the Emergency Room to see if an earlier amputation was possible. Because of the unexpected Emergency Room visit, Dr. Rollins was unavailable and Russell Dumire, M.D. ("Dr. Dumire") assumed care. After Dr. Dumire examined Mr. Gallo, he agreed to perform the more immediate amputation the next day – December 28, 2009.

[Dr. Padhiar] performed the "pre-surgical anesthesia consult evaluation." [Dr. Padhiar's] performing the evaluation is notable because he had an alcohol addiction. He was arrested at least eight times for driving under the influence ("DUI") in Illinois, Michigan, Ohio, and Pennsylvania, including once in November 2009 – one month before Mr. Gallo's unexpected surgery. Because of this addiction and its subsequent consequences, at least one state revoked his medical license. At the time, though, Pennsylvania had not.

In light of [Dr. Padhiar's] alcohol history and despite Mr. Gallo being 81 years old and having a history of both "cardiovascular and pulmonary medical conditions," [Dr. Padhiar] never "conduct[ed] a physical examination," a cardiac evaluation, a pulmonary assessment, a chest x-ray, or an electrocardiogram test in his pre-surgical evaluation. Furthermore, despite "Mr. Gallo's pre-induction vital signs show[ing] that he was hypotensive[] with a blood pressure of 78/34" no action was taken by either [Dr. Padhiar] or any of the hospital's medical staff "to raise [Mr.] Gallo's blood pressure." On the contrary, [Dr. Padhiar] and the medical staff proceeded as normal by administering general anesthesia. Accordingly, on December 28, 2009, Dr. Dumire performed the toe amputation with [Dr. Padhiar] assisting as the anesthesiologist.

"Some time during or immediately after the [amputation, Mr.] Gallo suffered a cardiac arrest." The medical staff initiated CPR, gave [Mr.] Gallo epinephrine and atropine, and transferred him "to the Intensive Care Unit." For three months, [Mr.] Gallo remained in the Intensive Care Unit unresponsive until he died on March 12, 2010. A "neurological evaluation revealed that Mr. Gallo suffered from anoxic encephalopathy[, brain damage due to lack of oxygen].

On October 5, 2011, [Gallo] filed a Complaint both individually and as Administratrix of Mr. Gallo's Estate [] against [the above-captioned defendants]. The counts against these … defendants consisted of both Wrongful Death and Survival Actions. Of particular note here are the allegations against [Dr. Padhiar]. In sum, Gallo argues alcohol impaired [Dr. Padhiar] at the time of Mr. Gallo's surgery and therefore [Dr. Padhiar's] actions and omissions ultimately caused Mr. Gallo "to suffer a cardiac arrest" that "result[ed] in his death."

On December 23, 2013, Gallo filed a Motion to Compel [Dr. Padhiar] to provide [Gallo] with more specific responses to [Gallo's] discovery requests. Two weeks later, on January 7, 2014, the [trial c]ourt granted Gallo's requests. On January 30, 2014, [Dr. Padhiar] filed a Motion for Reconsideration. Shortly after that, on February 6, 2014, the [trial c]ourt vacated its January 7th Order and scheduled a February 12th Hearing to address the privilege issues. The Hearing occurred as scheduled and the [trial c]ourt requested both parties submit briefs.

On February 26, 2014, [Dr. Padhiar] submitted his Brief-in-Opposition; and, on March 10, 2014, Gallo submitted hers. In Gallo's brief she narrowed the "drug and alcohol treatment records" to the records [Dr. Padhiar]:

1. Revealed to the Pennsylvania medical license board to obtain his Pennsylvania license;
2. Released to Conemaugh in 2006 to obtain employment and credentials there;
3. Disclosed to the Pennsylvania medical license board to "maintain his [Pennsylvania] medical license;" and
4. Divulged to the Cambria County Court of Common Pleas to lessen his criminal sentence for his 2010 DUI arrest and conviction.

Trial Court Opinion (T.C.O), 6/18/2014, at 1-4 (citations omitted).

By order dated June 13, 2014, the trial court granted Gallo's motion to compel, determining that Dr. Padhiar had effectively waived any privilege by including in his answer to Gallo's complaint specific denials to Gallo's allegation that he was impaired by alcohol at the time of Mr. Gallo's surgery. The trial court further determined that the "good cause" requirement for disclosure under both the Pennsylvania and federal statutes was satisfied.

Dr. Padhiar timely filed a notice of appeal and, in response to the trial court's order, a statement of errors complained of on appeal.[1] On appeal, Dr. Padhiar claims that privileges created by both federal regulations and state law preclude disclosure of the confidential communications contained in his alcohol treatment records.[2]

---

[1] The trial court's order granting Gallo's motion to compel is a collateral order under Pa.R.A.P. 313, and is thus immediately appealable. *See Rhodes v. USAA Casualty Ins. Co.,* 21 A.3d 1253, 1258 (Pa. Super. 2011) ("Generally, discovery orders involving purportedly privileged material are appealable because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot."); *Gormley v. Edgar,* 995 A.2d 1197 (Pa. Super. 2010) (determining that a discovery order involving allegedly privileged mental health information is appealable collateral order to pursuant to Pa.R.A.P. 313).

[2] In her brief, Gallo suggests that the federal regulation is inapplicable because Appellant is not a government employee. Gallo's Brief at 13 n. 1. We are unpersuaded by the authority Gallo cites in support of her argument. The treatment records at issue herein are held by programs receiving federal funding. Thus, as the trial court noted, the records fall under the scope of the federal regulations dealing with disclosure and privilege. *See* Trial Court

*(Footnote Continued Next Page)*

J-A04033-15

We address Dr. Padhiar's claims mindful of the following. "Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." *Gormley v. Edgar*, 995 A.2d 1197, 1202 (Pa. Super. 2010). It is well-settled that "[t]he right to claim a privilege is a personal one belonging to the individual protected by the statutory privilege." *See Commonwealth ex rel. Romanowicz v. Romanowicz*, 248 A.2d 238 (Pa. Super. 1968). However, "statutorily-created privileges are not absolute. The privilege conferred must be balanced against countervailing interests in insuring the fairness and integrity of the judicial system. The state's 'compelling interest' in insuring that the truth is revealed in the course of the adversarial process justifies an implied waiver of privilege." *O'Boyle v. Jensen*, 150 F.R.D. 519, 522 (M.D. Pa. 1993) (citations omitted).

Dr. Padhiar first contends that the trial court erred in determining that the specific denials of allegations that Dr. Padhiar was intoxicated at the time of Mr. Gallo's surgery, contained in Dr. Padhiar's answer to Gallo's complaint, constituted offers of testimony for the purposes of the federal

*(Footnote Continued)* ─────────────
Opinion, 6/16/2014, at 5; 42 C.F.R. § 2.3 ("Under the statutory provisions quoted in §§ 2.1 and 2.2, these regulations impose restrictions upon the disclosure and use of alcohol and drug abuse patient records which are maintained in connection with the performance of any federally assisted alcohol and drug abuse program.").

- 5 -

regulations governing confidentiality of alcohol and drug abuse patient records. Dr. Padhiar's Brief at 14-16.

> Section 527 of the Public Health Service Act, 42 U.S.C. § 290ee-3, with certain exceptions not relevant to this proceeding, provides that:
>
>> [r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall ... be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.
>
> Subsection (b), in turn, authorizes the disclosure of otherwise confidential records-regardless of whether the patient has given prior written consent - "[i]f authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor." 42 U.S.C. § 290ee-3(b)(2)(C).

***Local 738, Int'l Bhd. of Teamsters v. Certified Grocers Midwest, Inc.***, 737 F. Supp. 1030, 1032-33 (N.D. Ill. 1990). "In order to implement these congressional goals and pursuant to 42 U.S.C. § 290ee-3(g)'s mandate, the Secretary of Health and Human Services … enacted regulations which provide the procedures and criteria" to obtain a court order authorizing disclosure of confidential communications made by a patient in the course of diagnosis, treatment, or referral for treatment. ***Id.*** at 1033. Those regulations provide, in pertinent part, as follows.

> (a) A court order under these regulations may authorize disclosure of confidential communications made by a patient to a program in the course of diagnosis, treatment, or referral for treatment only if:

- 6 -

* * *

(3) The disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications.

42 C.F.R. § 2.63(a)(3).

With respect to disclosure,

Congress has determined … that the public interest in encourag[ing] the understandably hesitant to come to drug abuse treatment centers in the first place and thereafter to continue to avail themselves of these services usually outweighs a private litigant's interest in obtaining probative and material evidence - at least until the patient himself has opened the door to disclosure of the confidential records. The door must be opened, moreover, within the context of the litigation or administrative proceeding itself - prior waiver or consent does not suffice. And finally, a court cannot compel the disclosure of otherwise privileged records unless and until the patient has waived his privilege by means of offering testimony or other evidence pertaining to their contents.

*Local 738*, 737 F. Supp. at 1034 (citations and quotations omitted).

If the confidential communications meet the criteria for disclosure under section 2.63, Section 2.64 provides that an order for disclosure may issue under the following circumstances.

(a) Application. An order authorizing the disclosure of patient records for purposes other than criminal investigation or prosecution may be applied for by any person having a legally recognized interest in the disclosure which is sought. The application may be filed separately or as part of a pending civil action in which it appears that the patient records are needed to provide evidence. An application must use a fictitious name, such as John Doe, to refer to any patient and may not contain or otherwise disclose any patient identifying information unless the patient is the applicant or has given a written consent (meeting the requirements of these regulations) to disclosure or the court

has ordered the record of the proceeding sealed from public scrutiny.

* * *

(d) Criteria for entry of order. An order under this section may be entered only if the court determines that good cause exists. To make this determination the court must find that:

> (1) Other ways of obtaining the information are not available or would not be effective; and

> (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64 (a), (d) (emphasis added).

"Therefore, if the information sought contains 'confidential communications,' plaintiff must satisfy **both** the 'good cause' requirements of [section 2.64(d)] and the requirements of [section 2.63(a)(3)]." **Fannon v. Johnston**, 88 F. Supp. 2d 753, 758 (E.D. Mich. 2000) (emphasis added).

Instantly, the trial court concluded that Dr. Padhiar made an offer of testimony, as contemplated by the federal regulations, in his Answer to Gallo's complaint. The court explained as follows.

> [I]n his response to Complaint Paragraph 24, [Dr. Padhiar] specifically denied "suffering [from] any condition that in any way affected his ability to provide reasonable and appropriate medical treatment to" Mr. Gallo. That Answer alone is sufficient for an "offering" to have been made because [Dr. Padhiar] has now given Gallo an opportunity to require disclosure of his confidential medical records so "a more complete picture" may be obtained. But [Dr. Padhiar] did not stop there. In response to Complaint Paragraph 26, [Dr. Padhiar] denied being impaired at the time of surgery. Once more, [Dr. Padhiar] opened the door for a more thorough examination of the subject matter.

- 8 -

> Accordingly, once the door has been opened, it cannot be closed. Thus, the [c]ourt holds an "offering" has been made.

T.C.O., 6/16/2014, at 8-9.

However, it is clear from our sister courts' interpretation of this provision that the offer of testimony contemplated by the regulations is testimony under oath in the traditional sense. ***See, e.g., Fannon,*** 88 F.Supp.2d at 762-65 (analogizing the offer of testimony contemplated by regulation subsection 2.63(a)(3) to the offer of testimony required by Federal Rule of Evidence 404(a)(1)).

As the trial court notes in its Opinion, depositions have yet to take place in the instant case. T.C.O., 6/16/2014, at 8. Thus, Dr. Padhiar has not had the opportunity to offer testimony. Additionally, "[a]n answer shall state the material facts which constitute the defense to the petition." Pa.R.C.P. 206.2(a). Pursuant to Pa.R.C.P. 1019, which governs the content of pleadings, Pennsylvania utilizes a fact-pleading scheme, in which parties "must not only [provide] notice of ... the ... claim ... and the grounds upon which it rests, but ... also formulate the issues by summarizing those facts essential to support the claim." ***Gates v. Gates***, 967 A.2d 1024, 1030-31 (Pa. Super. 2009) (citations and quotations omitted). Thus, we cannot agree with the trial court that Dr. Padhiar's adherence to the relevant procedural rules constitutes an offering as contemplated by Section 2.63(a)(3).

As Dr. Padhiar did not commence this litigation, we find this situation distinguishable from those cases that conclude a plaintiff has waived privilege by placing confidential communications at issue in a complaint. ***See Octave ex rel. Octave v. Walker***, 103 A.3d 1255, 1263 (Pa. 2014) ("[Plaintiffs] knew or reasonably should have known James's mental health would be placed directly at issue by filing the lawsuit."); ***O'Boyle v. Jensen***, 150 F.R.D. 519, 522 (M.D. Pa. 1993).

Moreover, as noted above "courts addressing the issue have determined that the mere fact that someone has filed a lawsuit and has put certain facts [at] issue does not constitute the requisite offering of testimony or evidence under 42 C.F.R. § 2.63(a)(3)." ***Local 738***, 737 F. Supp. at 1033-34, (quoting ***Whyte v. Connecticut Mutual Life Ins. Co.***, 818 F.2d 1005, 1010 and n. 18 (1st Cir.1987)).

Finally, to the extent that Gallo alleges that Dr. Padhiar waived any privilege by disclosing the contents of his treatment records to Conemaugh Health System, the Pennsylvania medical license board, or the Cambria County Court of Common Pleas, we reiterate that Section 2.63(a)(3) is litigation-specific. ***Local 738***, ***supra***. Thus, those prior disclosures have no effect on the privilege asserted by Dr. Padhiar in the instant case.

As we have determined that Dr. Padhiar has not offered testimony with respect to the confidential communications at issue, we hold that the trial court erred in determining that Dr. Padhiar "opened the door" to any

disclosure under section 2.63(a)(3). Accordingly, because Gallo has failed to establish that the information sought meets the requirement for disclosure under section 2.63(a)(3), we need not consider whether good cause exists to compel disclosure under section 2.64(d). **See Fannon**, 88 F. Supp. 2d at 758.

Finally, Dr. Padhiar claims that the trial court erred in determining that the records should be disclosed under the "good cause" exception contained in subsection (b) of the Pennsylvania Drug and Alcohol Abuse Control Act (the Act). 71 P.S. § 1690.108(b). Dr. Padhiar's Brief at 9-14.

"Statutory interpretation 'is a question of law and, as such, our standard of review is *de novo* and our scope of review is plenary.'" **J.C.B. v. Pennsylvania State Police**, 35 A.3d 792, 794 (Pa. Super. 2012).

> The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.[] § 1921(b).
>
> Generally speaking, the best indication of legislative intent is the plain language of a statute…. Under [1 Pa.C.S.] Section 1921(c), it is only when the words of a statute are not explicit that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. Consistently with the Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity. Finally, we note the maxim of statutory interpretation that the expression of one thing in a statute implies the exclusion of others not expressed. Similarly, the court may not supply omissions in the statute when it appears that the matter may have been intentionally omitted.

- 11 -

*Commonwealth v. Finley*, 860 A.2d 132, 140 (Pa. Super. 2004) (some internal citations, footnotes, and quotation marks omitted).

Instantly, the trial court determined that a reading of subsection (b) and (c) of the Act imputes into subsection (c) a good faith exception to disclosure. T.C.O., 6/16/2014, at 10-11. We disagree.

In *O'Boyle v. Jensen*, the United States District Court for the Middle District of Pennsylvania interpreted the relevant provisions of the Act, stating

> Pennsylvania law places additional restrictions on the release of alcohol/drug abuse treatment records. The Pennsylvania confidentiality statute tracks federal law to the extent the patient records sought were "prepared or obtained" pursuant to the [the Act], providing for the release of such records upon a showing of "good cause". [71 P.S. § 1690.108(b)]. Section 1690.108(b) provides, in relevant part:
>
> > All patient records ... prepared or obtained pursuant to [the Act] shall remain confidential, and may be disclosed only with the patient's consent ... Disclosure may be made for purposes unrelated to ... treatment or benefits only upon an order of a court of common pleas after application showing good cause therefor. In determining whether there is good cause for disclosure, the court shall weigh the need for the information sought to be disclosed against the possible harm of disclosure to the person to whom such information pertains, the physician-patient relationship, and to the treatment services, and may condition disclosure of the information upon any appropriate safeguards....
>
> *Id.*
>
> However, unlike the federal statute, the Pennsylvania statute provides that if the records sought are in the possession of a "private practitioner, hospital, clinic, drug rehabilitation or drug treatment center" as they are in this case, such records:

shall remain confidential and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient.

71 P.S. § 1690.108(c). **There is no provision in this section comparable to that found in the federal statute and in Pennsylvania section 1690.108(b) providing for the release of the treatment records by court order upon a showing of good cause.**

*O'Boyle*, 150 F.R.D. at 521-22 (emphasis added).[3]

While we are not bound by the determinations of the federal court, we find persuasive its interpretation of the Act. Accordingly, as in *O'Boyle*, subsection (c), related to disclosure of documents held by private facilities, controls. As noted above, the plain language of subsection (c) does not include a good cause provision. Accordingly, we hold that the trial court erred in determining that the good cause exception of subsection (b) applies

---

[3] Notwithstanding its holding that subsection (c) of the Act was applicable, the *O'Boyle* Court determined that the plaintiff in that case had waived any privilege by filing the 1983 action at issue. 150 F.R.D. at 522. ("Despite the absence of such a provision, we find that the records which defendants seek are discoverable because the privilege conferred by section 1690.108(c) has been waived. Plaintiff waived the privilege by filing this action to recover for O'Boyle's death.") Such is not the case here.

to subsection (c). Thus, we conclude that the records sought by Gallo are protected by the Act, without exception, subject to disclosure by Dr. Padhiar.

Thus, for all of the foregoing reasons, we hold that the documents sought by Gallo are protected by federal and statutory privilege; therefore, the trial court erred in granting Gallo's motion to compel. Accordingly, we reverse the trial court's order.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015